**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOHN PAUL DILLON,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-cv-01272** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |

**MEMORANDUM & ORDER**

Movant John Paul Dillon was sentenced by this court on October 31, 2024 to 51 months in custody plus three years of supervised relief, after entering a guilty plea to charges of bank fraud, wire fraud, and money laundering. Judgment was entered on November 1, 2024. *United States v. Dillon*, No. 3:23-cr-00032-1 (M.D. Tenn.), ECF Nos. 60, 123, 125.[1] He instituted this civil action by filing a motion for relief from judgment under 28 U.S.C. § 2255. (Doc. No. 1.) Now before the court are his sealed *Ex Parte* Motion for Appointment of Counsel Under 18 U.S.C. § 3006A[2] (Doc. No. 13) and three separate sealed, *ex parte* motions to expedite the ruling on his motion to appoint counsel (Doc. Nos. 19, 21, 26). For the reasons set forth herein, the Motion for Appointment of Counsel will be denied and his motions to expedite that ruling will be denied as moot.

## I. LEGAL STANDARD – SECTION 3006A

A movant seeking relief under 28 U.S.C. § 2255 is not constitutionally entitled to counsel. *Garza v. Idaho*, 586 U.S. 232, 246 (2019) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555

---

[1] Filings in the underlying criminal case are hereinafter cited using the format "Crim. Doc. No. ______."

[2] Pursuant to a motion filed in the underlying criminal case, the court entered an Order in that case granting Dillon leave to file his motion under seal and *ex parte*. Crim. Doc. No. 156.

(1987)); *United States v. Augustin*, 16 F.4th 227, 233 (6th Cir. 2021). And most movants seeking habeas relief proceed *pro se*. *Garza*, 586 U.S. at 246 (footnoted citation omitted).

However, the court may appoint counsel for any "financially eligible person" who is seeking relief under § 2255, whenever the court "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Under this standard, which "contemplates a peculiarly context-specific inquiry," courts "should consider the legal complexity of the case, the factual complexity of the case, and the petitioner's ability to investigate and present his claims, along with any other relevant factors." *Augustin*, 16 F.4th at 233–34 (citations omitted). The decision whether to grant or deny counsel under this standard is discretionary with the court. *See id.* at 234 (reviewing the denial of a motion to appoint counsel for abuse of discretion)

## II. THE MOVANT'S ARGUMENTS

Dillon's § 2255 motion asserts two relatively straightforward claims of ineffective assistance of counsel. (Doc. No. 1.) In his Motion for Appointment of Counsel, Dillon argues that (1) he is financially unable to obtain private counsel, since most of his assets were seized by the government under the forfeiture order in the underlying criminal case; and (2) his § 2255 motion presents "highly complex allegations of prosecutorial vindictiveness, suppression of exculpatory evidence, and inter-agency collusion between the prosecuting Assistant United States Attorney and multiple state agencies." (Doc. No. 1 at 1–2.) In support of the latter argument, he posits that he is in possession of newly discovered exculpatory evidence[3] that "fundamentally destabilizes the underlying indictment" and that it will "require complex federal discovery to unearth" suppressed

[3] He also argues that his motion and the supporting documentation should remain under seal because detailing his newly discovered evidence publicly would "compromise Petitioner's legal strategy and reveal protected whistleblower activities prematurely." (Doc. No. 1 at 2.)

communications between the prosecuting attorney, the FBI, and the Tennessee Department of Children's Services ("DCS"). (*Id.* at 2.) He also maintains that a full-blown evidentiary hearing will be required to "examine the full timeline of the prosecutorial retaliation, mandating counsel under Rule 8(c)" of the Rules Governing Section 2255 Proceedings. (*Id.*) Finally, he asserts that the Office of the Federal Public Defender is conflicted out of representing him in this matter, because his § 2255 motion also brings ineffective assistance of counsel claims against the Assistant Federal Public Defender who represented him in the underlying criminal case.[4] (*Id.* at 3.)

The exhibits attached to his motion are (1) a letter from DCS dated May 8, 2026, verifying that Dillon is not "listed by DCS as a substantiated perpetrator of child abuse or neglect" and that DCS has not located "any open Child Protective Services cases in which [Dillon] is named as an alleged perpetrator of abuse or neglect" (Doc. No. 13-2 at 2); and (2) an email to Chuck Brown, DCS records custodian, demanding a copy of Dillon's "complete DCS files and communications," that, according to Dillon's demand email, Brown had previously denied "under the guise of implied protective issues, confidentiality, or ongoing investigations." (Doc. No. 13-1 at 2.) Based on the (new) verification from DCS that Dillon is not a substantiated perpetrator of child abuse or neglect and is not the subject of an open case alleging as much, Dillon asserted that he was entitled to the documents that had previously (he believes) been withheld from him, including "[a]ll external communications . . . between any DCS personnel and Assistant U.S. Attorney Taylor Phillips, the U.S. Attorney's Office for the Middle District of Tennessee, or the Federal Bureau of Investigation"; any federal subpoenas, warrants, or requests for information about him served on DCS by the Department of Justice; and all internal DCS communications discussing Assistant U.S.

[4] Actually, while he was originally represented by a Federal Public Defender, he retained counsel in early January 2024, following which his appointed counsel was permitted to withdraw, ten months before his sentencing on October 31, 2024. Crim. Doc. Nos. 75–77.

Attorney Phillips, the DOJ, or federal litigation involving Dillon. (*Id.*) Also included in this exhibit is Brown's response email, which stated: "Although you are not substantiated, the allegations were made against you, thus you do not have a right to the records under TCA 37-5-107. You will need to have a subpoena issued for the records." (*Id.* at 3.)

Obviously, none of these documents has anything to do with the claims of ineffective assistance of counsel actually articulated in Dillon's § 2255 motion. In his *Ex Parte* Supplement to Motion for Appointment of Counsel, Dillon further explains that, "[b]ased on evidence [he] obtained after filing, he intends to seek leave to amend to add a claim of vindictive and retaliatory prosecution." (Doc. No. 22-1 at 4; *see id.* ("The government may not punish a person for exercising a protected right, and a charging or sentencing decision driven by retaliation violates due process." (citation omitted)).) He asserts that pursuing this claim "requires legal skill that a *pro se* litigant lacks." (*Id.*) More specifically, he apparently intends to pursue a claim that the government prosecuted him because he reported "suspected fraud to the U.S. Department of Agriculture hotline on December 22, 2022";[5] he was indicted a mere six weeks later; and the government at his sentencing requested that he be sentenced at the top end of the guidelines range. (*Id.*) In addition, DCS has now "certified" that he is not a substantiated perpetrator of child abuse or neglect. (*Id.* at 5.)

But, he claims, the evidence he needs to prove this claim is "held by others." (*Id.*) Specifically, he asserts that the DCS records custodian has verified that communications exist among DCS, the Assistant U.S. Attorney, and the FBI and that he cannot obtain these

[5] To be clear, he did not report fraud *by* a government agent; he alleged fraud by his former spouse. (*See* Doc. No. 26 at 2 (stating that he had submitted a claim of "Participant Fraud" against Kayla Dillon, his former wife).)

communications without a subpoena; nor has he succeeded in obtaining records from the Department of Agriculture regarding his "Hotline Tip No. 81307." (*Id.*)

In his Third Motion to Expedite Ruling on his Motion for Appointment of Counsel, Dillon asserts that "Urgency Has Materially Increased Since Prior Motions," specifically because he has obtained responsive records from the federal and state Offices of Inspector General pertaining to his Hotline Tip alleging SNAP benefits fraud by his former wife, confirming that he submitted the fraud tip on December 22, 2022 and then was arrested on federal fraud charges on February 8, 2023. (Doc. No. 26 at 1–3.)

## III. DISCUSSION

At the change of plea hearing in August 2023, Dillon testified that he had a "master's level" education. Crim. Doc. No. 86 at 2. At that hearing, he pleaded guilty pursuant to a written plea agreement to charges of wire fraud, bank fraud, and money laundering based on his having, among other things, executed a "scheme and artifice to obtain money under the control of a financial institution by means of materially false and fraudulent pretenses, representations and promises; basically submission of a false and fraudulent [Payroll Protection Program ('PPP')] application for a large loan." *Id.* at 3. He agreed that the government agent's factual recitation "accurately informed the Court of what [he] did," and he expressly acknowledged that the government would be able to prove the charges against him. *Id.* at 24–26. And he admitted that he was pleading guilty because he was, in fact, guilty of the charges. *Id.* at 26. As summarized in the Presentence Report, the charges were based on Dillon's submission of fraudulent applications in 2020 and 2021 for hundreds of thousands of dollars' worth of loans under the under the PPP and the Economic Injury Disaster Loan Act and ultimately defrauding the Small Business Administration out of nearly $1,000,000. (Presentence Report ("PSR") ¶¶ 23–33, 37.) He used a portion of the fraud proceeds

to make a down payment on a residence, while also defrauding a lender out of approximately $470,000 to fund the remainder of the residential purchase. (*Id.* ¶¶ 34–36.)

Even after he entered a guilty plea, and after the court modified his conditions of release once in May 2023, Crim. Doc. No. 44, Dillon continued to engage in deceptive conduct, as discussed during the November 2023 hearing on the government's motion to revoke pretrial release. At the close of that hearing, the court remarked that Dillon was a "walking perjurer" who was apparently incapable of telling the truth. Crim. Doc. No. 83 at 27.

Dillon's present claim that he is in possession of evidence to support claims of retaliatory prosecution and prosecutorial misconduct is, to say the least, far-fetched. First, the questions of whether Dillon is a substantiated perpetrator of abuse and neglect and whether he is or is not the subject of a DCS investigation simply have no bearing on his convictions related to his fraudulently obtaining PPP loans. Regarding his claim of retaliatory prosecution, the government's investigation into the charges against him obviously had to have begun long before Dillon was indicted on February 6, 2023 and before he submitted a fraud tip through the Department of Agriculture's fraud tipline in December 2022. Aside from that problem, he does not provide any explanation for why the government would "retaliate" against him for submitting such a tip against his former spouse. As noted above, Dillon was not a "whistleblower"—he did not report fraud by the government—and the suggestion that the prosecution against him was in retaliation for his having submitted a fraud tip concerning his ex-wife is utterly fantastical. He also has no evidence to support his suggestion of prosecutorial misconduct and no basis for believing such evidence exists. Nothing he has presented serves to "destabilize" his conviction—particularly given that he admitted in open court to the conduct alleged in the Indictment and that the government had the ability to prove those facts.

Taking into consideration the legal complexity of the case, the factual complexity of the case, and the petitioner's ability to investigate and present his claims, the court finds that it is not in the interest of justice to appoint counsel to assist Dillon to pursue utterly imaginary, frivolous claims, irrespective of his financial condition. If he seeks to pursue these claims, he is fully capable of doing so on his own. He is intelligent and educated, reportedly having a "master's level" education—far in excess of that of most § 2255 movants, the vast majority of whom proceed *pro se*. Accordingly, Dillon's Motion for the Appointment of Counsel will be denied, and his other motions will be denied as moot.

## IV. CONCLUSION AND ORDER

For the reasons set forth herein, the *Ex Parte* Motion for Appointment of Counsel (Doc. No. 13) is **DENIED**, and the motions to expedite the ruling on that motion (Doc. Nos. 19, 21, 26) are **DENIED AS MOOT**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge